# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 22, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**TIANA M.,**
**Petitioner Below, Petitioner**

**v.)  No. 25-ICA-185**    (Fam. Ct. Kanawha Cnty. Case No. FC-20-2013-D-1441)

**MICHAEL M.,**
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Tiana M.[1] ("Mother") appeals the Family Court of Kanawha County's April 8, 2025, order denying her petition for modification of custodial allocation and child support.[2] Respondent Michael M. ("Father") did not participate in this appeal.[3]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the family court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating the family court's order and remanding the matter for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties have two daughters who were born in 2011 and 2014. On June 26, 2015, the family court entered a temporary order setting forth a parenting schedule, which was limited to dates in the year 2015.[4] In July 2015, Mother left West Virginia for military training and returned in January 2017. Between 2015 and 2017, the parties acted under a

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is self-represented.

[3] We recognize our limited and circumspect review of a family court order in an uncontested appeal, like this one, when the respondent fails to participate on appeal to support the order.

[4] The family court never entered a final order after the dates in the temporary June 26, 2015, order had passed.

1

notarized agreement dated July 13, 2015, wherein they agreed that Father would have day-to-day custody and legal guardianship of the children throughout Mother's military training but that "the children would be returned to the [M]other when she returned from military training." This notarized agreement was never incorporated into a court order.

On February 22, 2017, approximately a month after Mother's return from military training, Father filed an emergency motion for temporary relief requesting primary custody of the children. Thereafter, the family court held a hearing, noting that Mother may not have been served with notice, proceeded with the hearing in Mother's absence, and awarded Father temporary primary custody of the children by order entered March 1, 2017. The temporary order gave Mother access to the children with Father's supervision.

Father subsequently filed a motion to modify the March 1, 2017, temporary order, requesting permanent primary custody of the children. On March 28, 2017, the family court held a final hearing on Father's motion. By order entered April 12, 2017, the family court found that the children's stability would suffer if they were returned to Mother and that it was in the children's best interest for Father to have primary custody. The court acknowledged that Mother had primary custody of another child who was born in 2007 and noted that Father was not the biological parent of that child. The April 12, 2017, order awarded Mother parenting time every other weekend from Friday at 7:00 p.m. through Monday at 8:00 a.m. The order also awarded Mother nine hours of parenting time on every Christmas Day, New Year's Day, and Easter, and required the parties to share Halloween for trick-or-treating with the children. Mother was ordered to pay child support in the amount of $712.12 per month. Mother appealed the April 12, 2017, order, which was affirmed by the Circuit Court of Kanawha County.[5]

On May 31, 2024, Mother filed a petition to modify the April 12, 2017, order as it pertained to child custody and child support. In support of her petition, she alleged that because more than seven years had passed since the April 12, 2017, order, the children's age and maturity constituted a substantial change in circumstances. She further asserted that she gave birth to another child in 2023, and that a modification was warranted for the children to establish a meaningful bond with their half-sibling pursuant to West Virginia Code § 48-9-102(a)(8) (2022). Mother also contended that pursuant to West Virginia Code § 48-9-209 (2024), Father had been denying her requests for parenting time, failed to provide her with a reliable phone number to contact the children, and failed to provide the children's current physical address. Regarding child support, Mother alleged that an application of the child support guidelines would result in more than a fifteen percent difference from the amount in the April 12, 2017, order.

---

[5] The record on appeal is devoid of the date the circuit court's order affirming the family court's order was entered.

On October 16, 2024, and January 14, 2025, the family court held final hearings on Mother's petition for modification. Testimony revealed that Mother moved to Georgia in 2019 and had no contact with the children between 2019 and 2021. Mother testified that her voluntary absence for those two years was due to her emotional instability from being upset about the limited amount of parenting time the family court awarded her in the April 12, 2017, order. Mother testified that after successfully pursuing therapy, she reestablished contact with the children and began visiting West Virginia in 2021 twice a month to spend time with them and permanently relocated to West Virginia in 2024. Mother testified to the birth of the children's new half-sibling in 2023 and that she was currently pregnant with another half-sibling. Testimony revealed that Mother had been exercising her parenting time faithfully and consistently since her relocation and that the parties' oldest child was in favor of Mother's proposed modification.[6] Father testified that he allowed the children to visit Mother once while she resided in Georgia, but that he did not permit the children to visit her in Georgia again because she failed to return the children in a timely manner.

By order entered April 8, 2025, the family court denied Mother's petition for modification. The family court found that it was undisputed that the children had primarily resided with Father since the April 12, 2017, order, and that Mother had relocated to Georgia in 2019. The family court stated that Mother testified that she wanted Father to move with the children to live with her in Georgia, but Father chose to remain in West Virginia due to the COVID-19 pandemic. The family court found that Mother voluntarily withdrew from having contact with the children for approximately two years after she moved to Georgia because she was upset about the parenting plan. The court went on to explain that Mother began contacting the children again in 2021, that the children visited her once while she resided in Georgia, that Mother gave birth to a son in 2023, and that the children spent every other weekend with Mother when she relocated back to West Virginia in 2024.

In denying Mother's petition, the family court explained that although it was undisputed that Mother had exercised parenting time every other weekend since she returned to West Virginia in 2024, Mother admitted that she previously chose not to have contact with the children for two years during 2019 and 2021. The family court also determined that while more than seven years had passed since the entry of the April 12, 2017, order, and the "children [were] indeed older and possibly more mature[,]" that their advancement in age did not constitute facts that had arisen since the April 12, 2017, order because "all children get older and are likely to become more mature." The family court further found that "the fact that [Mother] gave birth to a son . . . in 2023 [did] not constitute a significant change in circumstances as to the lives of the minor children herein." Regarding Father's failure to provide Mother with the children's phone number and current

---

[6] The record does not indicate that a guardian ad litem was appointed to represent the children's interest.

address, the court found that there was no evidence before the court suggesting that she had no phone numbers or addresses since she had been exercising her parenting time every other weekend since she returned to West Virginia. The family court determined that Mother ultimately failed to prove that a substantial change in circumstances had occurred or that a modification would promote the children's best interests. It is from this April 8, 2025, order denying her petition for modification that Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

At the outset, we must note that Mother's brief fails to state any assignments of error as required by Rule 10 of the West Virginia Rules of Appellate Procedure. Rather, her brief contains an argument section comprised of six arguments with no distinct headings.[7]

---

[7] Mother's brief failed to comply with Rule 10(c) of the West Virginia Rules of Appellate Procedure. As we previously acknowledged,

The Supreme Court of Appeals of West Virginia ("SCAWV") recently explained the importance of compliance with Rule 10 in providing for clear, concise, and organized briefs and emphasized the significance of that rule and that parties, including self-represented parties, should not anticipate that this Court will find or make arguments for them. *See Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Va.*, 245 W. Va. 495, 502-03, 859 S.E.2d 438, 445-46 (2021). Rule 10(c) provides that "the petitioner's brief *shall* contain the following sections in the order indicated[.]" (Emphasis added.) The rule goes on to specify, in order, nine different sections that must follow the cover page beginning with a table of contents. *Id*. Rule 10(c)(3) requires that the brief "open with a list of the assignments of error that are presented for review, expressed in terms and circumstances of the case but *without unnecessary detail*." (Emphasis added). "The practice of opening a brief with a series of assignments of error serves to alert the Court to the singular issue or issues that may have adversely affected the outcome before the trial court." *Wilson v. Kerr*, No. 19-0933, 2020 WL 7391150, at *3 (W. Va. Dec. 16, 2020)

4

However, as has been our past practice, we will be mindful that "[w]hen a litigant chooses to represent h[er]self, it is the duty of the [court] to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party." *Joseph B. v. Candie G.*, No. 24-ICA-425, 2025 WL 1604532, at *2 (W. Va. Ct. App. June 6, 2025) (memorandum decision) (citing *Bego v. Bego*, 177 W. Va. 74, 76, 350 S.E.2d 701, 703 (1986)).

Therefore, we will only address the issues we can reasonably determine comprise the substance of Mother's appeal. Upon review, we conclude that Mother makes two general arguments assigning error to the family court's decision.

First, Mother asserts that the family court erred by failing to properly analyze the amount of time that had passed since the April 12, 2017, order. In support of her argument, Mother contends that the family court failed to consider whether the imbalance of parenting time over the past eight years had impacted the parties' daughters, particularly the oldest, who is now a teenager. Mother also maintains that the family court failed to properly consider and analyze whether the birth of a half-sibling was a substantial change in circumstances.[8] We find merit in Mother's arguments.

Modifications of child custody based upon a substantial change in circumstances are governed by West Virginia Code § 48-9-401 (2022), which states that

> Except as provided in § 48-9-402 or § 48-9-403 of this code, a court shall modify a parenting plan order if it finds, on the *basis of facts that were not*

---

(memorandum decision). Clearly defining the issues presented averts the danger that "the Court and respondent may discern different issues from a petitioner's lengthy, free-flowing argument." *Id.* While the brief must open with a list of assignments of error presented for review, Rule 10(c)(7) mandates that the brief contain an argument section which has separate, distinct headings corresponding to each of the aforementioned assignments of error. Rule 10(c)(7) also requires the separate argument section to include "citations that pinpoint when and how the issues . . . were presented to the [family court]." This Court may disregard errors that are not adequately supported by specific references to the record. *Id.*

*Christopher M. v. Lucia M.*, 25-ICA-39, 2025 WL 2993689, at *4 n.5 (W. Va. Ct. App. Oct. 24, 2025) (memorandum decision).

[8] Mother also argues that the family court erred by failing to consider the bonds the parties' daughters have with their other half-siblings. Mother avers the two-year-old half-sibling has known the parties' children for the entirety of his life, and that the children are close to and love their older, seventeen-year-old half-sibling.

*known or have arisen since the entry of the prior order* and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

(Emphasis added).

Mother's petition for modification identified the passage of time, the children's advancement in age since the April 12, 2017, order, as well as the recent birth of a half-sibling, as substantial changes in circumstances. On these issues, the family court made the following findings:

While it is true that more than seven years have passed since the entry of the Final Order, and the children are indeed older and possibly more mature, these do not constitute facts that have arisen since entry of the Final Order which were not anticipated in the prior order. As time progresses, all children get older and are likely to become more mature.

The fact that [Mother] gave birth to a son with a different biological father in 2023 does not constitute a significant change in circumstances as to the lives of the minor children herein.

The family court also found that the testimony in this case was that Mother had no contact with the children for approximately two years between 2019 and 2021, she reestablished contact with them in 2021, they visited her one time while she resided in Georgia, her son was born in 2023, and she returned to West Virginia in 2024 where she has been consistently exercising her parenting time.

The Supreme Court of Appeals of West Virginia ("SCAWV) has explained,

"[U]nder the plain meaning of the statute, the relevant question is not whether a particular change in circumstance could have been anticipated, but whether the parenting plan actually did anticipate, and provide accommodation for, the particular change." *Skidmore v. Rogers*, 229 W. Va. 13, 21, 725 S.E.2d 182, 190 (2011). "The phrase 'not anticipated therein' does not mean that the change in circumstance could not have been anticipated generally, but rather that the parenting plan order does not make provisions for such a change." *Ibid*. Indeed, we have stated that "[w]hether ... a change in circumstance could have been anticipated when the original parenting plan order was entered is of no consequence." *Ibid*.

*Jared M. v. Molly A.*, 246 W. Va. 556, 562, 874 S.E.2d 358, 364 (2022). In *Skidmore*, the SCAWV held that a child's advancement in age and the birth of half-siblings could

constitute substantial changes in circumstances on which a modification could be based, so long as the circumstances were not actually articulated in the previous parenting plan order. *See Skidmore*, 229 W. Va. at 21-22, 725 S.E.2d at 190-191. In a previous opinion, this Court discussed the facts of *Skidmore*.

> In *Skidmore*, the father sought modification of a parenting plan that was adopted when the parties' child was four years old and provided the father minimal parenting time. *Id*. at 16, 725 S.E.2d at 185. At the time the modification was sought, the child was eleven years old, the father had remarried, and half-siblings had been born. *Id*. For these reasons, the father argued a substantial change in circumstance had occurred to warrant a significant increase in parenting time. *Id*. The GAL in *Skidmore* opined that modifying the current parenting plan was in the best interest of the child. *Id*. at 22, 725 S.E.2d at 191.

*Marcus P. v. Mathew M.,* No. 22-ICA-103, 2023 WL 1463436, at *2 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision). The *Skidmore* Court explained that while limiting the father's parenting time may have been appropriate when the child was four years of age, the original parenting plan may no longer serve the best interest of an eleven-year-old-boy and thus, the child's "*significant* advance in age, which was not provided for in the original parenting plan, [was] a substantial change of circumstance on which a modification of the parenting plan order *may* be based." *Skidmore*, 229 W. Va. at 21, 725 S.E.2d at 190 (emphasis added). After concluding that the child's significant advance in age and the birth of half-siblings were substantial changes in circumstances not provided for in the previous parenting plan, the *Skidmore* Court explained that a modification of the parenting plan was appropriate if it served the child's best interest and went on to provide a detailed analysis of why the modification was in the child's best interest. *Id*. at 22, 725 S.E.2d at 191; *see also Andrea H. v. Jason R.C*., 231 W. Va. 313, 314, 745 S.E.2d 204, 206 (2013) ("To justify a change of child custody, *in addition to a change in circumstances . . . it must* be shown that such change would materially promote the welfare of the child.") (emphasis added).

In the instant matter, the children were ages five and two when the previous parenting plan order was entered and thirteen and ten during the modification proceedings. Upon review, the April 12, 2017, initial order that Mother seeks to modify neither addressed the children's advance in age nor the birth of any half-siblings. The Legislature has set forth several overarching objectives for courts to follow in determining the best interests of children involved in custody matters as it is the "public policy of this state to assure that the best interest of children is the court's primary concern" when determining custody for children whose parents do not live together. W. Va. Code § 48-9-101 (2001). Specifically, West Virginia Code § 48-9-102 provides, in relevant part, that

(a) The primary objective of this article is to serve the child's best interests by facilitating: . . .

(4) *Meaningful contact between a child and each parent . . .*

(8) *Meaningful contact between a child and his or her siblings, including half-siblings.*

(b) A secondary objective of this article is to achieve fairness between the parents consistent with the rebuttable presumption of equal (50-50) custodial allocation.

(Emphasis added). Here, the family court's general and conclusory findings in the order on appeal that the birth of a half-sibling did "not constitute a significant change in circumstances as to the lives of the minor children" and the children's advance in age were not substantial changes in circumstances because "all children get older" appear to be contrary to the holdings in *Skidmore*. Further, the court's finding that a modification based on these circumstances would not "promote the children's best interest" seems to conflict with the Legislature's intent. However, absent a proper analysis, we are unable to sufficiently review whether the family court abused its discretion. *See Mullins v. Mullins*, 226 W. Va. 656, 662, 704 S.E.2d 656, 662 (2010) (It is necessary to remand matters when there is an absence of adequate factual findings and legal basis for the family court's ultimate decision.)

While the family court's order seems to base its rulings on Mother's absence between 2019 and 2021 since there was no finding of any ongoing absence or harm, the SCAWV has explained that when an order on appeal contains inadequacies such as unclear determinations and complete silence on relevant issues, such deficiencies prevent meaningful appellate review because courts cannot "ascertain whether there was an abuse of discretion." *Id*. Stated simply, we are unable to provide a meaningful review regarding the family court's consideration of the passage of time as it relates to Mother's prior absence, the children's advancement in age, and the birth of a half-sibling without further explanation from the family court as we refuse to presume the reasons for a court's rulings. To this point, we have explained that

Family courts are required to include a detailed analysis of their findings of facts and conclusions of law so that other parties, other potential judges at the trial level, and other judges on the appellate level can understand the facts considered by the family courts and how they were weighed in the courts' evaluation and decisions. It is not an appellate court's position to speculate, assume, or infer what the family court may or may not have considered in its

8

final decision. Although this Court is required to give a certain level of deference to the family court's factual findings and applications of law to fact, it is difficult to do so if the family court fails to articulate in its order the factors it considered and how they impacted the court's decision.

*Katherine A. v. Jerry A.*, 248 W. Va. 672, 683, 889 S.E.2d 754, 765 (Ct. App. 2023). Therefore, because the family court failed to provide sufficient findings and a proper analysis explaining how the children's advancement in age or the birth of a half sibling were not substantial changes in circumstance pursuant to *Skidmore*, we vacate those findings and remand this matter with directions for the family court to enter a new final order setting forth findings of fact and conclusions of law sufficient to facilitate a meaningful appellate review. On remand, it is essential for the family court to address and explain why *Skidmore* is similar or distinguishable from the matter in order to support the family court's ultimate determination.

Next, Mother argues that the family court erred by failing to consider Father's interference with her parenting time. In support of her argument, she maintains that Father previously denied providing her with phone numbers and addresses to contact the children as Father acknowledged that he had changed his phone number several times. She avers that the family court failed to consider that Father withheld dates of school activities and prevented her from exercising parenting time during holidays such as Mother's Day because neither were addressed in the April 12, 2017, order. We find no merit in this argument.

Uncontroverted testimony was introduced during the final hearing that Mother has been exercising her parenting time every other weekend. The family court's order found as much, determining that "it is undisputed that [Mother] has exercised parenting time every other weekend since she returned to West Virginia in 2024." While the parties may have had historical issues relating to parental interference, neither party expressed that it was an ongoing challenge. Thus, we are unable to find that the family court clearly erred or abused its discretion regarding this issue.

Accordingly, we vacate the family court's April 8, 2025, order, and remand the matter for further proceedings consistent with this decision. The final order is hereby converted to a temporary order until the entry of a new final order consistent with this decision is entered by the family court.

Vacated and Remanded.

**ISSUED:**  December 22, 2025

**CONCURRED IN BY:**

Judge Daniel W. Greear
Judge S. Ryan White

**DISSENTING:**

Chief Judge Charles O. Lorensen

LORENSEN, C.J., dissenting:

I respectfully dissent from the majority's conclusion that the family court's order was so deficient as to necessitate vacating and remanding for further proceedings given the clear finding in the order and our deferential standard of review. I would have affirmed the family court's April 8, 2025, order because the court's finding that Mother failed to establish a substantial change in circumstances to warrant a parenting plan modification is not clearly erroneous in light of the record as a whole nor an abuse of discretion.

The majority relies heavily on *Skidmore v. Rogers*, 229 W. Va. 13, 725 S.E.2d 182 (2011), a case not cited or relied upon by Mother. *Skidmore* is distinguishable from the facts before us and is not controlling. The father in *Skidmore* filed a petition to modify the parenting plan alleging that there had been a substantial change in circumstances from the entry of the initial permanent parenting plan due to the child's advance in age and birth of a half sibling. When the initial parenting plan was entered, the child was four years old. In *Skidmore*, Father consistently exercised parenting time for more than six years, when he filed a petition to modify seeking more time with the child. In *Skidmore*, the Supreme Court of Appeals of West Virginia specifically stated that advance in age and birth of a half-sibling would not necessarily constitute a substantial change in circumstances and that courts must decide this on a case-by-case basis. *Id*. at 22 n.3, 725 S.E.2d at 191 n.3.

Here, the facts differ from *Skidmore*. Unlike the father in *Skidmore* who had consistently exercised parenting time for seven years, Mother was either absent or had sporadic contact with the children from 2015 to 2021. Mother asserts that she began visiting the children in West Virginia in 2021 for two weekends per month to reestablish her connection with the children. Mother gave birth to the children's half-sibling in 2023. Thereafter, Mother moved to West Virginia in 2024 and has had parenting time every other weekend with the children. The children were age one and four, respectively, when Mother joined the military in 2015 and have lived with Father since that time. While ten years have lapsed since the initial parenting plan (not placed in the record by Mother) was entered, Mother has not consistently exercised parenting time for the entirety of that time, the

children have had stability with Father, and Mother was at times in arrears with support obligations. The family court found that based on these specific facts, a substantial change in circumstances had not occurred solely due to the advance in age of the children or the birth of the children's half-sibling.

It is commendable that Mother relocated to be closer to the children, has begun to reestablish her connection with the children, and encourages the bond between the children and their half-sibling. However, the facts in this case are unique and the family court is best situated to determine whether a substantial change in circumstances has occurred. Thus, I would have affirmed the family court's order and respectfully dissent from the majority's decision to vacate and remand.